## BROWN *v.* THE STATE.

One does not forfeit his right to defend himself against an assault solely because he may have been guilty of a wrongful act in the past. The facts of this case do not bring it within the ruling announced in *Drysdale* v. *State,* 83 *Ga.* 744 (10 S. E. 358, 6 L. R. A. 424, 20 Am. St. R. 340), so as to authorize a charge to the effect that a father may attack for intimacy with his daughter in his presence, raising a well-founded belief that the criminal act is just over or about to begin, and the person attacked, though in danger, may not defend against such attack.

FEBRUARY 14, 1911.

Indictment for murder. Before Judge Martin. Pulaski superior court. October 3, 1910.

*Herbert L. Grice,* for plaintiff in error. *H. A. Hall, attorney-general,* and *E. D. Graham, solicitor-general,* contra.

EVANS, P. J. The defendant was convicted of the murder of Nelson Spivey, and sentenced to the penitentiary for life. It was the theory of the State that the deceased had come upon his daughter Della and the defendant under circumstances raising a well-founded belief that the act of criminal sexual intercourse was just over or about to begin, and that the deceased assaulted the defendant in defense of his daughter's virtue, and was killed by the defendant in repelling his attack. The only witnesses who testified on the part of the State were the children of the deceased. The daughter, Della, denied any criminal intercourse with the defendant. She testified, that about eight o'clock she started to visit a neighbor's house, and when a short distance from her home she met the defendant and one Joe Bryant; she stopped to talk with the defendant, and Joe Bryant passed on; very soon her father came upon them and ordered her to return home, and she turned and ran, and heard the defendant say to her father, "Don't seem like you are talking to your daughter; seems like you are talking to me," and in a minute or so she heard the pistol fire. She heard no altercation before the pistol was fired. Another daughter testified, that a little while after supper Della left the house, and soon afterwards was followed by her father carrying a buggy-whip; she heard the pistol shot and about an hour afterward went to the place where the body of her dead father was lying. It was about one hundred yards from her father's house, and six or seven yards from a vacant cabin that stood by the road or path going through the field. The defendant lived about a mile from her residence. Nelson Spivey, a fourteen-year-old son of the deceased, testified, on the direct examination: He saw Della go in the house; no one was with her, but "Bill Brown went there after she got there; the door of the house was closed." He reported this to his father, who got his buggy-whip and went down there after her, and it was not long afterwards before he heard the pistol shot; then he "went and saw his body lying not far from the corner of the old house." On the cross-examination he testified: He did not see the defendant go in the house, but saw him come out just a little while before the shooting; he saw the defendant

come out of the house after the shooting; he was there at the time of the shooting, close enough to see it, but did not see it, because he was hiding behind a pine tree in the field. After the shooting he went to the house and informed his mother of the fact. The house has only one door, and that faces the road. He did not actually see either the defendant or his sister go in the house, but he heard them talking, and was satisfied that they did go in there, and returned and told his father that Della was down there in the old house.

Complaint is made of several excerpts from the charge of the court, to the effect that if the jury believed beyond a reasonable doubt that the defendant and the daughter of the deceased were caught by the deceased whilst engaged in criminal sexual intercourse, or beginning sexual intercourse, or the criminal sexual intercourse was just over, the father would have the right to assault the defendant in defense of his daughter's virtue, and the defendant would not be permitted to stand his ground and shoot to repel the father's attack upon him, even though it was a dangerous attack; that whatever the law would justify the father in doing under such circumstances it will not justify the defendant in preventing by homicide. The error alleged is, that there was no evidence to warrant such instructions, and that they did not embody a correct statement of the law, in that the defendant by such instructions was deprived of the right of self-defense against an assault committed upon him on account of an act of fornication already committed. In *Drysdale* v. *State*, 83 *Ga.* 744, it was held that "A husband may attack for intimacy with his wife in his presence, raising a well-founded belief that the criminal act is just over or about to begin; and the adulterer, though in danger, has no right to defend himself by using a deadly weapon." This principle was followed in *Wilkerson* v. *State*, 91 *Ga.* 729, 734 (17 S. E. 990, 44 Am. St. R. 64). The ruling in these cases was discussed in *O'Shields* v. *State*, 125 *Ga.* 310 (54 S. E. 120), where it was held that the expression "just over or about to begin" was used with reference to a state of facts and circumstances which left doubtful in the mind of the husband the stage of the proceedings which his arrival interrupted. In other words, if the situation as disclosed to the husband was such that he was unable to determine whether the adulterous act was just over or about to begin, he would be justifiable in killing the

adulterer.  In the case at bar it is only inferential that the defendant engaged in criminal sexual intercourse with the deceased's daughter.  If he had criminal intercourse with her, it was over before the defendant had left the old house.  The only inference deducible from the evidence is that the homicide occurred in the road near the old house.  The law never justifies a killing for a past injury, nor will a person be deprived of the right of self-defense solely because he may have been guilty in the past of some wrongful act.  A parent may protect his minor daughter from debauchery, to the same extent that the husband may defend the chastity and virtue of his wife.  The idea of prevention or defense against an impending or progressing wrong must enter into all cases of justifiable homicide.  *Mize* v. *State,* 135 *Ga.* 291 (69 S. E. 173).  So if the deceased assaulted the defendant for the sexual act with his daughter in the house, and to avenge such conduct after it had occurred, the defendant would not have forfeited his right of self-defense.  The evidence did not warrant the instructions of which complaint is made.

*Judgment reversed.  All the Justices concur.*